UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABDULGANI DAVUT,<br><br>                           Petitioner,<br><br>v.<br><br>KRISTI NOEM, et al.,<br><br>                          Respondents. | Case No.: 3:25-cv-03740-CAB-DDL<br><br>**ORDER:**<br><br>**(1) PARTIALLY GRANTING PETITION FOR A WRIT OF HABEAS CORPUS [Doc. No. 1]; and**<br><br>**(2) DENYING MOTION FOR TEMPORARY RESTRAINING ORDER [Doc. No. 2].** |

      Pending before the Court is Petitioner Abdulgani Davut's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. [Doc. No. 1 ("Petition")]. Petitioner claims that he was out of custody under an order of supervision until he was unlawfully detained without adequate notice by Immigration and Customs Enforcement ("ICE") on December 1, 2025. [Petition at 4–5.] He seeks immediate release and an order preventing ICE from removing him to a third country without adequate notice and an opportunity to be heard. [*Id.* at 12.] For the following reasons, the Court **PARTIALLY GRANTS** the request for a writ of habeas corpus and **ORDERS** Respondents to immediately release Petitioner from

custody under the same conditions of release that existed immediately prior to his December 1, 2025 re-detention.

## I.     BACKGROUND

Petitioner is an Afghan national who crossed into the United States through a gap in the fence near Tecate and was immediately stopped by a Border Patrol agent. [Petition at 4.] He was placed in custody, but after a positive credible fear finding received parole valid for one year (until December 27, 2025) and was released on December 28, 2024 on an order of supervision pending his removal proceedings. [*Id.*] Following three hearings before an immigration judge, Petitioner was ordered removed on July 31, 2025 to Afghanistan, or Turkey in the alternative, but received withholding of removal to Afghanistan. [*Id.*; Doc. No. 5 at 3.] He remained out of custody on supervised release until the events leading to this Petition.

On Sunday, November 30, 2025 at 11 P.M., Petitioner received a voicemail from ICE. [Petition at 5.] Petitioner called ICE back the next day, Monday December 1, 2025, and ICE told him to check in that day. [*Id.*] When Petitioner left his apartment to check in, "three ICE officers pulled up in a vehicle and arrested him." [*Id.*] According to ICE, Enforcement and Removal Operations "was notified by the Intensive Supervision Appearance Program (ISAP) . . . that Petitioner was not compliant with the program requirements [of his supervised release]." [Doc. No. 5 at 3.] ICE therefore detained Petitioner on December 1, 2025. [*Id.*] Petitioner argues that this reasoning is pretextual and that Petitioner was detained following the shooting of two National Guard members in Washington, D.C. on November 26, 2025 by an Afghan national. [Petition at 4–5.]

The Court ordered supplemental information from Respondents regarding Petitioner's alleged violation of his supervised release. [Doc. No. 7.] The supplement states that "ERO records . . . state that, on December 1, 2025, ICE officers were notified by [ISAP] that Petitioner was not being compliant with the program. There are no additional details in ERO records concerning this event." [Doc. No. 8-1 at ¶ 4.]

Respondents say that they re-detained Petitioner "to execute his final order of removal" but that "ICE is not attempting to remove Petitioner to Turkey." [Doc. No. 5 at 3.] Instead, ICE sent a travel document request to Enforcement and Removal International ("RIO") headquarters on December 4, 2025 and is "pending further response from RIO on identifying a third country for removal." [*Id.*] Respondents further state that once a third country is identified for removal, ICE will notify Petitioner in writing of that country at least 24 hours prior to removal and will refer him to an asylum officer to process a fear-based claim if Petitioner claims a fear of removal to that country. [*Id.*]

## II.    LEGAL STANDARD

A writ of habeas corpus challenges the legality of a petitioner's custody and seeks to secure release from that illegal custody. Under 28 U.S.C. § 2241, a district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." The petitioner bears the burden of demonstrating that he is in illegal custody. *See Martinez v. Noem*, No. 25-CV-2740-BJC-BJW, 2025 WL 3171738, at *2 (S.D. Cal. Nov. 13, 2025).

## III.   DISCUSSION

### A.    Jurisdiction

Respondents argue that "[t]o the extent Petitioner is challenging ICE's decision to detain him for the purpose of removal, such a challenge is precluded" by 8 U.S.C. § 1252(g). [Doc. No. 5 at 8.]

As the Supreme Court reasoned in *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999), § 1252(g) "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Id.* (emphasis in original); *see also Ibarra-Perez v. United States*, 154 F.4th 989, 991 (9th Cir. 2025) ("The Supreme Court has instructed that we should read § 1252(g) narrowly."). Accordingly, § 1252(g) does not bar the "many other decisions or actions that may be part of the deportation process[,]" and "[i]t is implausible

that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id.*

While Petitioner challenges the lawfulness of his detention, he does not substantively challenge ICE's decision to execute his removal order to an appropriate country. [*See generally* Petition.] Accordingly, the Court is satisfied of its jurisdiction and proceeds to the merits.

### B. *Zadvydas* Does Not Apply

Though the Petition makes no claim of prolonged detention under *Zadvydas v. Davis*, 533 U.S. 678, 683 (2001), Respondents contend that Petitioner is lawfully detained under *Zadvydas*' holding that a six-month post-removal order detention is presumptively reasonable. [Doc. No. 5 at 5.] At this point, Petitioner has been detained for less than two months. While Respondents are correct that Petitioner is subject to a final order of removal, the Court is not persuaded that *Zadvydas* is relevant because the *Zadvydas* petitioners were detained both before and after their final orders of removal. They had not been released pending their removal proceedings or after their final order of removal. There was no issue in *Zadvydas*, therefore, of a violation of due process rights by re-detention after a period of release from custody. Here, however, such concerns exist because Petitioner was out of custody for the pendency of his removal proceedings and for months following his final order of removal. *See Nguyen v. Hyde*, 788 F. Supp. 3d 144, 149 (D. Mass. 2025) ("This case is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in *Zadvydas*. This case is about ICE's authority to *re-detain* Mr. Nguyen after he was issued a final order of removal, detained, and subsequently released on an OSUP." (emphasis in original)); *J.L.R.P. v. Wofford*, No. 1:25-CV-01464-KES-SKO (HC), 2025 WL 3190589, at *4 (E.D. Cal. Nov. 14, 2025) ("Numerous courts have found that when ICE revokes the release of a noncitizen who has been ordered removed to effectuate that noncitizen's removal, 'it is [ICE's] burden to show a significant likelihood that the alien may be removed.'")

1  The Court therefore holds that Respondents cannot rely on *Zadvydas* to remedy the
2  violation of ICE's regulations governing re-detention discussed below.

### C. ICE Violated 8 C.F.R. § 241.13(i)

Once ICE releases a noncitizen on an order of supervision, ICE's ability to re-detain that noncitizen is governed by its own regulations. Relevant here, 8 C.F.R. § 241.13(i)(1) provides for revoking an order of release if the noncitizen "violates any of the conditions of release" and § 241.13(i)(2) provides for revoking an order of release when "on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." Moreover, § 241.13(i)(3) provides that "[u]pon revocation, the alien will be notified of the reasons for revocation of his or her release." The Court finds that Respondents have not shown that ICE complied with any of these requirements.

First, despite being given an additional opportunity to provide evidence of Petitioner's alleged violation, Respondents provided only a conclusory statement that a violation occurred. Second, Respondents have not demonstrated that there was a significant likelihood of Petitioner's removal in the reasonably foreseeable future, either on December 1, 2025 or today. Petitioner cannot be removed to Afghanistan, ICE is not seeking to remove him to Turkey, and no third country has been identified. As this Court and many of our sister courts have concluded, this is insufficient evidence of changed circumstances under 8 C.F.R. § 241.13(i)(2). *See, e.g., Sun v. Noem*, No. 3:25-CV-02433-CAB-MMP, 2025 WL 2800037, at *2 (S.D. Cal. Sept. 30, 2025) (finding insufficient government's evidence that they "are preparing to apply for the necessary documents to remove petitioner" to his home country); *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("The fact that Respondents intend to complete a travel document request for Petitioner does not make it significantly likely he will be removed in the foreseeable future."); *Nguyen v. Hyde*, No. 25-CV-11470-MJJ, 2025 WL 1725791, at *4 (D. Mass. June 20, 2025) (finding insufficient the government's assertions that they are processing a travel document because they "have not identified

what concrete steps ICE has taken to process" the document nor whether the request was submitted to the removal country); *Roble*, No. 25-CV-3196 (LMP/LIB), 2025 WL 2443453, at *4 (finding insufficient the government's assertion that ICE "requested third country removal assistance from [Enforcement and Removal Operations] HQ." (alteration in original)).

Because the Government plainly fails to meet its own regulation by determining that, "on account of changed circumstances . . . there is a significant likelihood that [Petitioner] may be removed in the reasonably foreseeable future," the Court finds that ICE was not entitled to revoke Petitioner's Order of Supervision under 8 C.F.R. § 241.13(i)(2).

As to Respondents' argument that Petitioner has not established prejudice from ICE's violation of its regulations, the Court holds that such a showing is not needed here because the violated regulation safeguards a fundamental liberty interest. *See Martinez v. Noem*, No. 25-CV-2740-BJC-BJW, 2025 WL 3171738, at *4 (S.D. Cal. Nov. 13, 2025) ("Because these provisions safeguard core constitutional rights, their violation inherently implicates due process concerns and is actionable even without a showing of prejudice."); *Zhang Haixiang v. Dep't of Homeland Sec.*, No. ED 25-CV-1890-JLS(E), 2025 WL 3683126, at *3 (C.D. Cal. Dec. 2, 2025), *report and recommendation adopted sub nom. Zhang v. Dep't of Homeland Sec.*, No. ED 25-CV-1890-JLS(E), 2025 WL 3679184 (C.D. Cal. Dec. 18, 2025). And the deprivation of this liberty interest simply cannot be fully remedied after the fact. *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990) ("[T]he [Supreme] Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." (emphasis in original)).

### D. Third Country Removal

Petitioner also requests that the Court enjoin Respondents from removing him to a third country without certain notice requirements and other protections. [Petition at 10–12.] But there is no evidence before the Court that if a third country is identified, Respondents will contravene Ninth Circuit precedent requiring Petitioner to be notified that he may apply for appropriate relief, including withholding of removal to that third

country. *See, e.g., Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999) ("Failing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process."). Indeed, Respondents have represented that "Petitioner will be notified in writing of the third country at least 24 hours prior to removal." [Doc. No. 5 at 3.] It is thus premature on the current record for this Court to order injunctive relief related to Petitioner's potential future removal to an unidentified third country. The Court **DENIES** Petitioner's request for relief on this issue.

## IV.   CONCLUSION

Based on the foregoing, Petitioner's request for a writ of habeas corpus is **PARTIALLY GRANTED** and the Court **ORDERS** Respondents to immediately release Petitioner from custody under the same conditions of release that existed immediately prior to his December 1, 2025 re-detention. The Court **DENIES** the motion for a TRO as moot.

The Clerk of Court shall close the case.

It is **SO ORDERED**.

Dated: January 26, 2026

Hon. Cathy Ann Bencivengo
United States District Judge